**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| **STATE OF MISSOURI, ex rel.** | ) |
| **CHRIS KOSTER** | ) |
| **Attorney General,** | ) |
| | ) |
| **Plaintiff,** | ) **Case No.  4:11-cv-1237 AGF** |
| | ) |
| **v.** | ) |
| | ) |
| **MARTIN A. WEBB, aka BUTCH WEBB,** | ) |
| **et. al.,** | ) |
| | ) |
| **Defendants.** | ) |

**PLAINTIFF'S SUGGESTIONS IN SUPPORT
OF
<u>MOTION TO REMAND</u>**

Plaintiff, State of Missouri ex rel. Attorney General Chris Koster, Attorney General for the State of Missouri, by and through his Assistant Debra K. Lumpkins, hereby moves this Court, pursuant to 28 U.S.C. § 1447(c), for an order remanding this case to the Twenty-First Judicial Circuit Court of the State of Missouri.  In support thereof the State states the following:

**SUMMARY OF ARGUMENT**

This court lacks removal jurisdiction because the complaint brings only state law claims for unlawful merchandising practices, under §407.020 of the Missouri Revised Statutes. Defendant claims that federal tribal immunity laws preempt this claim is solely a defense, and do not change this state law claim into a federal question.  Defendant claims that tribal immunity laws completely preempt the State law claims, however here the complaint concerns a violation

1

of Missouri State Law in which a principal, and his non-tribal corporations conduct illegal, usurious, and unlicensed loan-making in Missouri to Missouri consumers.  Congress did not intend tribal immunity laws to completely preempt Missouri State Consumer Laws.

Therefore, this case should be remanded back to Missouri State Court.

## FACTS

1.      Defendants maintain various websites in which they offer and solicit loans in Missouri to Missouri consumers.

2.      Defendants have at all times relevant, regularly engaged in soliciting, making, and collecting loans to and from Missouri consumers in varying amounts from approximately $300 to $3,000.

3.      Loans made by the Defendants are payable in several monthly installments, with interest rates exceeding 250%.

4.      Defendants have not sought nor obtained certification from the tribe to become a tribal entity.

## BURDEN OF PROOF

On a motion to remand, the removing party has the burden of proving that removal was proper and the federal court has jurisdiction.  *State ex rel. Webster v. Best Buy Co., Inc.*, 715 F. Supp. 1455, 1456 (E.D. Mo. 1989).  To meet this burden, a defendant must overcome a "strong presumption" against removal.  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "Removal statutes are strictly construed, and any doubts about the propriety of removal are resolved in favor of state court jurisdiction and remand." *Arnold v. First Greensboro Home Equity Inc.,* 327 F.Supp.2d 1022, 1025 (E.D.Mo. 2004); *See also Transit Cas. Co. v. Certain Underwriters at Lloyd's of London,* 119 F.3d 619, 625 (8th Cir.1997).  There is a presumption in

favor of remand.  *City of University City v. AT&T Wireless Services, Inc., et al.*, 229 F.Supp.2d 927, 933 (E.D. MO, 2002).  Further, any doubts about the propriety of removal are resolved in favor of state court jurisdiction and remand.  *State of Mo. ex rel. Webster v. Freedom Financial Corp.*  727 F.Supp. 1313, 1315 (W.D.Mo., 1989) *citing Shamrock Oil and Gas Corp. v. Sheets*, 313 U.S. 100 (1941).    The removing party bears the burden of showing that all prerequisites to jurisdiction are satisfied.  *Dorsey v. Sekisui America Corp.*, 79 F.Supp.2d 1089 (E.D. Mo. 1999).  Additionally, the United States Supreme Court suggests a higher hurdle for the removal of actions brought by a State.  The Supreme Court has opined that "considerations of comity make us reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it."  *Franchise Tax Board of the State of California v. Construction Laborers Vacation Trust for Southern California et al.*, 463 U.S. 1, 21, n. 22 (1983).

## ARGUMENT

### I.  Complaint is Well-Pleaded and Does Not Create a Federal Question

Removal based on a federal question jurisdiction is governed by the "well-pleaded-complaint-rule," which states that a federal question is present only if it is presented on the face of the plaintiff's properly pleaded complaint," *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 (1987), unaided by defendant's answer or removal notice.  *Thermalcraft, Inc. v. U.S. Sprint Communications Co.,* 779 F.Supp. 1039 (W.D. Mo. 1991).  This rule makes the plaintiff the master of the claim, thus the plaintiff may avoid federal court by pleading only state law claims. *Caterpillar*, 482 U.S. at 392.

It is firmly established that a federal defense, including a preemption defense, does not provide a basis for removal, "even if the defense is anticipated in the plaintiff's complaint, and

3

even if both parties concede that the federal defense is the only question truly at issue in the case." *Caterpillar,* 482 U.S. at 393.  Here, when looking solely at the well pleaded complaint, there is no federal question at issue.  The complaint presents no federal question on its face.  The complaint alleges solely that Defendants make unlicensed and unlawful loans in violation of Missouri law.  This claim requires only the interpretation of Missouri consumer protection laws.  This case is distinguished from *Grable* (cited in Defendants' Notice of Removal, ECF Doc. 1, ¶ 10) in that *Grable* required the interpretation of federal tax law, whereas in this case there need not be any interpretation of a federal consumer law.  *Grable & Sons Metal Prods., Inc. v. Darue Eng'g and Mfg.,* 545 U.S. 308 (2005).  A federal question exists only where "federal question is presented on the face of the plaintiff's properly pleaded complaint," *Caterpillar*, U.S. at 386, and thus here, no federal question exists.

The well-pleaded complaint rule provides that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint. *Lyons v. Philip Morris Inc.,* 225 F.3d 909, 912 (8th Cir. 2000).  However, this rule is inapplicable if it is evident that Congress has intended for federal law to completely supplant state law.  *Id.; Noel v. Laclede Gas Co.,* 612 F.Supp.2d 1061 (E.D. Mo. 2009).  The Supreme Court has found complete preemption in only three instances: certain cases under the Labor Management Relations Act, the Employee Retirement Income Security Act, and the National Bank Act.  *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6–11 (2003).

Here, defendants fail to make this claim.  Their Notice nowhere cites a federal statute in which Congress "wholly displace[d]" the State's state-law causes of action and in which it

provided "procedures and remedies governing that cause of action." *Beneficial*, 539 U.S. at 8. This, alone, should compel remand.

## II.  Defenses Do Not Create Federal Questions

Instead of bringing a complete preemption claim, Defendant's relied on several defensive tribal sovereignty principles, namely tribal immunity, the Indian commerce clause, and unspecified associated tribal law.  Notice [ECF Doc.1], ¶ 11.  The Supreme Court has held numerous times over the past 100 years that tribal sovereignty issues are defensive matters, and do not give rise to federal question jurisdiction. *Taylor v. Anderson*, 234 U.S. 74, 75 (1914); *Okla. Tax Comm'n v. Graham*, 489 U.S. 838 (1989).  In *Okla. Tax Comm'n*, the Supreme Court expressly rejected the claim that tribal immunity provided removal jurisdiction, stating that "it has long been settled that the existence of a federal immunity to the claims asserted does not convert a suit otherwise arising under state law into one which, in the statutory sense, arises under federal law." *Id*.

The Indian Commerce Clause also does not completely displace state law.   *See, e.g., Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222 (10th Cir. 2010) (a tribe "cannot seriously argue that the Indian Commerce Clause, of its own force, automatically bars or preempts a state from enforcing its tax law outside Indian country . . . ."), at 1237.  The Indian Commerce Clause is but an enabling clause: it provides Congress with the "power to legislate in the field of Indian affairs." *Cotton Petroleum Corp. v. New Mexico*, 490 U.S. 163, 192 (1989). District courts, including at least one in the Eighth Circuit, have also held that state law is not completely preempted by the Indian Commerce Clause.  For example, in *Omaha Tribe of Nebraska v. Miller*, 311 F.Supp.2d 816 (S.D. Iowa 2004), the court held that an Iowa tobacco escrow statute was not preempted by the Indian Commerce Clause because "the Indian

5

Commerce Clause in and of itself does not provide an automatic exemption for Indian tribes." *Id.* at 822 (citing *Confederated Tribes of Siletz Indians of Oregon v. Oregon*, 143 F.3d 481, 486 (9th Cir. 1998)).  Other courts in other districts agree that Congress did not intend the Indian Commerce Clause to completely preempt all state actions against Indians.  *See, e.g., Idaho ex rel. Wasden v. Native Wholesale Supply Co.*, 2009 WL 940731, *2, 3 (D. Idaho 2009) (stating Defendant "failed to present any statute or treaty expressing Congress's intent to regulate the entire field of Native American commerce); *Wiener v. Wampanoag Aquinnah Shellfish Hatchery Corp.*, 223 F.Supp.2d 346, 352 n. 10 (D. Mass. 2002) (noting that the "federal government has not completely preempted the field of Indian affairs").

Defendants also claim that tribal sovereignty, tribal law, and tribal rights prevent the State from regulating commercial activity on Indian lands.  Notice, ECF Doc 1  ¶ 11.  They base this claim on the provisions and representations in the loan agreements and on the websites.  These are also defensive claims that do not completely preempt state law claims, thus removal was improper under this theory.  The Attorney General brought this action based on Defendants' actions in the State of Missouri, and thus they do not get the protection of tribal sovereignty, which is reserved for actions conducted on tribal land.  Defendants advertised in Missouri, allowed access to their websites and applications in Missouri, and deposited and received payments to and from banks in Missouri.  There is no indication that anyone receiving these loans left Missouri, traveled to the Cheyenne Reservation in South Dakota, or that all Missouri borrowers were tribal members.  Thus, the holding of *Oklahoma Tax Com'n v. Graham*, 489 U.S. at 841, where removal on the grounds of tribal sovereign immunity was held to be improper as to a state's action arising under state law, is clearly applicable to the present action.  *See also*, *Nevada v. Hicks*, 533 U.S. 353, 362 (2001) ("When on-reservation conduct involving only

6

Indians is at issue, state law is generally inapplicable, for the State's regulatory interest is likely to be minimal and the federal interest in encouraging tribal self-government is at its strongest. When, however, state interests outside the reservation are implicated, States may regulate the activities even of tribe members on tribal land…") (internal citations omitted).

### III.  Defendants' Forum Selection Clauses Are Unenforceable

Claims of tribal sovereignty, tribal law, and tribal rights also fail on the merits.  The State's recitation of the forum and choice of law selection clauses in the complaint are included as allegations in the complaint merely to provide the factual support to show that Defendant uses these provisions to deceive consumers and violate public policy.   The inclusion of these provisions does not mean that they govern the consumers that accepted the terms, nor the State, which was not a party to the loan contracts.  On the contrary, public policy dictates that these provisions are not given any weight.  Missouri courts have refused to enforce a forum selection clause on the grounds of unfairness or unreasonableness.  *High Life Sales Co. v. Brown–Forman Corp.,* 823 S.W.2d 493, 498 (Mo. banc 1992).

Two factors that mitigate in favor of the fairness of enforcing a forum selection clause are the reciprocal nature of the provision and unequal bargaining power.  *See Id.*  Here, a corporation is forcing a take it or leave it contract onto consumers with a dire need for money.  Public policy would dictate that this is unfair.  Also, the provision is non-reciprocal, since under the provision all cases would be under the sole jurisdiction and law of the Sioux tribe.

It would also be unreasonable to apply these clauses Missouri consumers.  On public policy grounds, Missouri has a strong interest in allowing its residents the protection of its consumer protection laws.  Allowing a waiver of these protections would be against public policy.  "Having enacted paternalistic legislation designed to protect those that could not

7

otherwise protect themselves, the Missouri legislature would not want the protections of Chapter 407 to be waived by those deemed in need of protection." *Huch v. Charter Communications, Inc.*, 290 S.W.3d 721, 725-26 (Mo. banc  2009).    Like here, in *Huch*, the plaintiffs brought a claim under Chapter 407, the Merchandising Practices Act, and the court refused to apply the forum selection clause, stating:

> The Missouri statutes in question, relating to merchandising and trade practices, are obviously a declaration of state policy and are matters of Missouri's substantive law. To allow these laws to be ignored by waiver or by contract, adhesive or otherwise, renders the statutes useless and meaningless.

> Id. at 726.

The State is not regulating commercial activity on Indian lands in South Dakota or otherwise interfering with on-reservation affairs as Defendants claim.  This case deals strictly with Defendants' activities in Missouri.  Defendants are making loans in Missouri to Missouri consumers, thus it involves off-reservation activity.  Defendants effectively concede as much. In their Motion to Dismiss, dated July 25, 2011, defendants did not assert any personal jurisdictional defenses; they waived any such defenses. *See* Fed. R. Civ. P. 12(h)(1). Thus, they concede that, by their loan making, they transacted business *in Missouri* and subjected themselves to Missouri's jurisdiction.

### IV. Not Tribal Businesses

Despite defendants' claims, this case does not implicate tribal issues, and there is no tribal business.  First, Missouri has not yet considered what it takes to become a tribal corporation, however, under the Tenth Circuit's test, defendants are not tribal corporations and cannot avail itself of any tribal sovereign attributes.  The Tenth Circuit, in *Breakthrough Mgmt. Group, Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1187 (10th Cir. 2010), *petition*

*for cert. filed May 9, 2011* (No. 10-1389), set forth a multi-factor test that a corporation must satisfy in order to be an "arm of the tribe" entitled to a tribe's sovereignty. Two of these factors are whether the corporation is created under tribal law and whether the tribe owns and manages the corporation. *See id*.

Here, defendant fails these two tests: it was not created under tribal law, but instead is a state-chartered company, and it is privately held and wholly managed by Webb.  Nor does Webb's status as a tribal member invest him with any tribal sovereign attributes. To the contrary, in *Puyallup Tribe, Inc. v. Dep't of Game*, 433 U.S. 165, 171–72 (1977), the Court held that the "doctrine of sovereign immunity . . . does not immunize the individual members of the Tribe." Even tribal officers – which Webb does not claim to be – are "not protected by the tribe's immunity from suit."  *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 59 (1978).  Further, tribal members going off-reservation are subject to state law as is any other person. Citing *Mescalero Apache Tribe v. Jones*, 411 U.S. 145 (1973), the Court in *Nevada v. Hicks*, 533 U.S. 353, 362 (2001), stated that, when "state interests outside the reservation are implicated, States may regulate the activities even of tribe members on tribal land." There, the Court rejected the notion that federal law prevented state officials from "investigat[ing] or prosecut[ing] violations of state law occurring off the reservation." *Id.* at 366. It explained that upholding the state's authority to do so "is necessary to 'prevent [reservations] from becoming an asylum for fugitives from justice.'" *Id.* at 364 (quoting *Fort Leavenworth R. Co. v. Lowe*, 114 U.S. 525, 533 (1885)). *See*, *e.g.*, *Mescalero*, 411 U.S. at 147–149 (upholding state's authority to tax tribe's commercial, off-reservation activity, holding that "[a]bsent express federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to non-discriminatory state law otherwise applicable to all citizens of the State" and rejecting as "particularly treacherous" the

9

broad generalization that states are prohibited from enforcing their laws "'whether the [tribal] enterprise is located on or off tribal land'"); *Organized Vill. of Kake v. Egan*, 369 U.S. 60, 62–63, 75–76 (1962) (state properly could enforce licensing and police power laws over off-reservation tribal fishing activities; "state regulation of off-reservation fishing certainly does not impinge on treaty protected reservation self-government").   Thus, Webb's status as a tribal member does not support removal.

In sum, the State's Complaint concerns solely state-law claims arising out of in-Missouri conduct in violation of Missouri law. If federal law applies at all, it is only in matters of defense. Accordingly, defendants improperly removed the case.

## V. Abstention Doctrine Applies

Assuming *arguendo* that this Court did have removal jurisdiction over this matter, the case must still be remanded on the basis of the *Younger* abstention doctrine. *See Younger v. Harris*, 401 U.S. 37, 52–53 (1971) (prescribing abstention in state criminal actions); *Huffman v. Pursue, Ltd*., 420 U.S. 592 (1975) (extending the doctrine of *Younger* abstention to state civil proceedings).   This doctrine holds that a federal court should abstain from interfering in a state proceeding, even though it has jurisdiction to reach the merits, if there is (1) an ongoing state judicial proceeding, instituted prior to any substantial progress in the federal proceeding; that (2) implicates important, substantial, or vital state interests; and (3) provides an adequate opportunity for the plaintiff to raise the federal constitutional claim advanced in the federal lawsuit. *Norwood v. Dickey*, 409 F.3d 901, 903 (8th Cir. 2005).

The *Younger* doctrine is rooted in federalism, and is principally concerned with the dual notions of equity and comity, *Allegheny Corp. v.McCartney*, 896 F.2d 1138, 1142 (8th Cir. 1990), as well as "the belief that the National Government will fare best if the states and their

10

institutions are left free to perform their separate functions in their separate ways." *Younger*, 401 U.S. at 44.  If the three-part test is satisfied, then the all claims, both state and federal, are to be heard in state court.  *See Allegheny Corp.*, 896 F.2d at 1142.  Here, with respect to the first prong of the *Younger* test, the Attorney General instituted a lawsuit in Missouri State Court against the Defendants when the Attorney General filed its petition in April 2011, and thus  there was already a pending State judicial proceeding at the time that the federal case was opened. Here, with regard to the second prong of the *Younger* test, this case involves an important and substantial State interest: enforcing Missouri's consumer protection laws applicable to entities making loans to Missouri consumers, namely the Missouri Merchandising Practices Act, RSMo § 407.  As discussed *supra*, the State has a strong interest in enforcing the Missouri Merchandising Practices to ensure that State residents are not victimized by predatory lending practices, particularly those involving unlicensed and usurious lending to Missouri consumers. Moreover, the State of Missouri strives to protect its citizens from persons who violate the statutory prohibitions enacted by the Missouri General Assembly for the benefit of the public through court proceedings in State of Missouri Courts.   The State's substantial interests in enforcing its consumer lending laws are undoubtedly the type of state interests envisioned by *Younger* and its progeny, and thus the second prong of the *Younger* test is satisfied in the present matter.  With regard to the third prong, the Defendants will have the opportunity to raise all of their constitutional defenses, including their defense of tribal sovereign immunity, in Missouri State Court, and in any subsequent judicial review or appeal. *See Alleghany Corp.*, 896 F.2d at 1143 (stating that the district court acted properly in abstaining on the basis of Younger  because the defendant "can raise its constitutional claims in a pending state proceeding.")    Accordingly,

11

the Defendant will have a full and fair opportunity to litigate their constitutional claims, and thus the third prong of the *Younger* test is satisfied.

Based on the foregoing, all three prongs of the *Younger* test are fully satisfied in the present matter, and this Court should invoke the "mandatory rule of equitable restraint" and remand this case back to the Agency for further State administrative action.

### COST AND FEES

The Court should award the State its costs and expenses, including attorney's fees, pursuant to 28 U.S.C. § 1447(c).  In deciding whether to award fees, the standard is whether there exists an "objectively reasonable basis" for removal: fees should be awarded "where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied."  *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).  Bad faith or frivolousness is not required.  *Lytle v. Lytle*, 982 F.Supp. 671, 674 (E.D.Mo. 1997).  Here, no "objectively reasonable basis" for removal exists: (a) this action strictly is about off-reservation conduct in violation of state law; (b) defendants cite no federal statute completely displacing the State's state-law claims or otherwise expressing Congressional intent to permit removal; (c) the U.S. Supreme Court over twenty years ago held that sovereign immunity is a defense and does not give rise to removal jurisdiction; (d) neither the Indian Commerce Clause nor other tribal law supports removal; and (e) defendants are not tribal corporations, and Webb's alleged status as a tribal membership does not support removal.

### CONCLUSION

WHEREFORE, the State requests that the Court:

(i)     grant this motion in all respects;

12

(ii)     remand this action to the Twenty-First Judicial Circuit; and

(iii)     award the State its costs and expenses, including attorney's fees, together with all

such further relief as the Court deems just.

Respectfully submitted,

CHRIS KOSTER
Attorney general

/s/ Debra K. Lumpkins
Debra K. Lumpkins, Mo Bar # 56033
Assistant Attorney General
P.O. Box 861; St. Louis, MO 63188
(314) 340-6816; Fax: 314-340-7957
Debra.lumpkins@ago.mo.gov

ATTORNEYS FOR PLAINTIFF

**Certificate of Service**

I hereby certify that on the 6th day of August, 2011, the foregoing was served
electronically with the Clerk of the Court using the CM/ECF system upon all counsel of record.

Debra K. Lumpkins
Assistant Attorney General